

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| LACY LEIGH LAIZURE, <br><br> Plaintiff, <br><br> v. <br><br> 1) CSAA INSURANCE EXCHANGE; <br> 2) CSAA FIRE & CASUALTY INSURANCE COMPANY, previously known as ACA INSURANCE COMPANY D/B/A AAA FIRE & CASUALTY INSURANCE CO; and <br> 3) AUTOMOBILE CLUB OF OKLAHOMA D/B/A AAA OKLAHOMA; <br><br> Defendants. | **CJ -2019 -02447** <br> **DAMAN CANTRELL** <br><br> Case No._____ <br> **JURY TRIAL DEMANDED** <br> **ATTORNEY'S LIEN CLAIMED** <br><br> DISTRICT COURT <br> **FILED** <br><br> JUN 17 2019 <br><br> DON NEWBERRY, Court Clerk <br> STATE OF OKLA. TULSA COUNTY |

## PETITION

COMES NOW, the Plaintiff, Lacy Leigh Laizure ("Plaintiff"), and for her causes of action against the Defendants, CSAA Insurance Exchange, CSAA Fire & Casualty Insurance Company, previously known as ACA Insurance Company d/b/a AAA Fire & Casualty Insurance Company, and Automobile Club of Oklahoma d/b/a AAA Oklahoma, alleges and states as follows:

### Parties, Jurisdiction, and Venue

1. Plaintiff is a citizen of the State of Oklahoma and resides in Tulsa County, State of Oklahoma. She has an insurable interest in the real property located at: 1816 W Easton Ct, Tulsa, Oklahoma 74127-6409 (the "Home").

2. Upon information and belief, CSAA Insurance Group is a personal-lines property and casualty insurance group in the United States, offering automobile, homeowners, and other personal lines of insurance to AAA members through partnerships with AAA clubs.

1



3. Upon information and belief, CSAA Insurance Exchange (the "Exchange") and CSAA Fire & Casualty Insurance Company ("CSAA"), among others, are included within the CSAA Insurance Group.

4. Upon information and belief, the Exchange is an unincorporated organization, formed under the laws of the State of California, through which subscribers exchange contracts of insurance relating to reciprocal insurers. The Exchange is a reciprocal insurer without equity owners and is the ultimate parent of a holding-company system.

5. Upon information and belief, CSAA, previously known as ACA Insurance Company d/b/a AAA Fire & Casualty Insurance Company, is an insurer that was formed under the laws of the State of Indiana, and it is a wholly-owned subsidiary of the Exchange and is controlled by the Exchange. CSAA is licensed and authorized to conduct business and write policies of insurance in Tulsa County, State of Oklahoma, and may be served with process through the Oklahoma Department of Insurance.

6. Upon information and belief, the Exchange, either directly or via its ownership and control of CSAA, has subscribers/members that are citizens of the State of Oklahoma. As an unincorporated reciprocal insurance exchange, the Exchange is deemed a citizen of any state in which its members are citizens; therefore, because it has subscribers (i.e. members or customers) who are citizens of the State of Oklahoma, the Exchange is deemed a citizen of the State of Oklahoma.

7. Upon information and belief, Automobile Club of Oklahoma, doing business under the tradename AAA Oklahoma ("AAA"), is a motor service club domiciled in the State of Oklahoma. It is a not-for-profit Oklahoma company that provides membership benefits, including

homeowner's insurance, through its various corporate affiliates and partners for whom it can be held vicariously liable, and it may be served in Oklahoma.

8. Upon information and belief, only members in good standing of AAA member clubs or corporations or firms in which such members are officers or partners shall be eligible to apply for insurance.

9. Upon information and belief, the above-named Defendants operate and are part of a reciprocal insurance exchange, wherein they pool and partner their businesses to offer membership discounts and entice members to purchase policies of insurance such that all of the subsidiaries and affiliated companies can be held collectively liable for breach of contract and bad faith.

10. The Exchange has an agreement with its subsidiaries, including CSAA as defined herein, whereby the Exchange is the lead insurer and its subsidiaries cede 100% of their premiums to the Exchange. Upon information and belief, the Exchange then retrocedes a very small percentage to each subsidiary, keeping the majority for itself.

11. Plaintiff became a member of AAA and procured through AAA a homeowner's insurance policy numbered HO3-003938677 (the "Homeowners Policy") and issued by CSAA on her Home, located in Tulsa County, State of Oklahoma.

12. The named Defendants, acting together and in concert with one another, sold and issued to Plaintiff the Homeowners Policy, which provided coverage to Plaintiff for her Home and other items in Tulsa County, State of Oklahoma. The Homeowners Policy was issued in Tulsa, Oklahoma, and all breaches and other relevant conduct described below happened in Tulsa, Oklahoma.

13. The incidents giving rise to this litigation occurred in Tulsa County, State of Oklahoma.

14. This Court has both subject matter jurisdiction over this action, as well as personal jurisdiction over the Defendants, and venue is proper.

## PLAINTIFF'S FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

15. All previous allegations are incorporated herein by reference, and Plaintiff further alleges and states:

16. Plaintiff entered into a valid and legally binding contract of insurance with Defendants via the Homeowners Policy.

17. On or about July 30, 2018, Plaintiff's Home, which was insured by Plaintiff's Homeowners Policy with Defendants, was severely damaged as a result of a water-heater leak.

18. The Homeowners Policy was in full force and effect on or about July 30, 2018, when Plaintiff's Home was damaged, and the damage to Plaintiff's Home was covered under the Homeowners Policy.

19. Plaintiff had paid all premiums due under the Homeowners Policy, made a timely and valid claim for benefits under the Homeowners Policy, cooperated with Defendants, and otherwise complied with all conditions precedent to coverage and payment under the Homeowners Policy, obligating Defendants to pay the full amount of Plaintiff's claim up to the limits of the Homeowners Policy.

20. Defendants breached the terms of the Homeowners Policy by failing to timely pay to Plaintiff all benefits owed.

21. As a direct result of Defendants' breach of the Homeowners Policy, Plaintiff has suffered damages, both general and special/consequential, in excess of $75,000.00.

WHEREFORE, Plaintiff prays for judgment against Defendants, plus interest, costs, and attorney fees as allowed by Okla. Stat. tit. 36, § 3629 and other law.

### PLAINTIFF'S SECOND CAUSE OF ACTION
### BAD FAITH

22. All previous allegations are incorporated herein by reference, and Plaintiff further alleges and states:

23. As an insured under the Homeowners Policy, Plaintiff was owed a duty of good faith and fair dealing by Defendants.

24. In handling Plaintiff's claim, Defendants violated the duty of good faith and fair dealing owed to Plaintiff, which violation includes, but is not necessarily limited to, the following:

   a. Defendants failed and refused to timely and properly investigate Plaintiff's claim.

   b. Defendants belatedly sent people out to inspect and evaluate Plaintiffs' Home even though it had already been inspected and evaluated.

   c. Defendants failed and refused to timely and properly evaluate Plaintiff's claim and improperly revised its own inspector's estimate downward many months after his inspection of Plaintiff's Home.

   d. Defendants failed and refused to timely and properly pay Plaintiff's claim, as they did not make a substantial payment on Plaintiff's claim for many months, and when they did, it was in an amount far below the value of Plaintiff's claim.

   e. Rather than investigate, evaluate, and pay the full value of Plaintiff's claim in a timely manner, Defendants delayed, without proper cause, payment of benefits due Plaintiff under the Homeowners Policy by dragging the claim process out for months and months while making incomplete piecemeal payments far below the value of the claim.

f. Defendants made untimely, incomplete, low-ball offers of payment to Plaintiff far below the value of her claim.

g. Defendants failed to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under their policies, to include Plaintiff's claim.

h. Defendants refused to consider the reasonable expectations of the insured.

i. Defendants committed institutional bad faith by the manner in which they handled Plaintiff's claim.

j. Defendants failed to perform a fair and objective investigation and evaluation of Plaintiff's damages and, instead, engaged in an outcome-oriented investigation and evaluation of Plaintiff's claim, designed to deny and/or wrongfully reduce the amount paid to Plaintiff on her claim.

k. Defendants wrongfully denied part of Plaintiff's claim under the guise that the damages were not caused by the water-heater leak.

l. Defendants kept Plaintiff in the dark about her claim and coverage and did not timely provide her with information or direction or respond to her inquiries.

m. Defendants purposefully, wrongfully, and repeatedly withheld benefits and coverages due Plaintiff under the Homeowners Policy.

n. Defendants forced Plaintiff to retain counsel to secure benefits that Defendants knew were payable.

o. Defendants put their interest in maximizing financial gain and limiting disbursements above the interests of Plaintiff.

25.     Defendants' violation of the duty of good faith and fair dealing was the direct cause of the injuries sustained by Plaintiff, which injuries include, but are not limited to, financial losses, such as loss of benefits under the Homeowners Policy, the inability of Plaintiff to repair her Home, additional mold growth and damage to the Home, and the inability of Plaintiff to pull out equity to fund her rental business and obtain a return on that investment; embarrassment and loss of reputation; and mental pain and suffering, such as anxiety, stress, and frustration.

26.     Defendants either recklessly disregarded the duty of good faith and fair dealing owed to Plaintiff or intentionally and with malice breached the duty of good faith and fairly dealing owed to Plaintiff such that Plaintiff is entitled to recover punitive damages against Defendants in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff prays for a judgment against Defendants in an amount that will compensate her for any and all losses she has suffered as a result of Defendants' bad-faith claim handling, which amount is in excess of $75,000.00, plus interest, costs, attorney fees, punitive damages, and such other relief as the Court may deem just and proper.

Respectfully submitted by:

*[signature]*

William D. Perrine, OBA No. 11955
Reagan Madison Fort OBA No. 20761
**PERRINE, REDEMANN, BERRY, TAYLOR & FRETTE, PLLC**
P.O. Box 1710
Tulsa, Oklahoma 74101
Telephone:   918-382-1400
Facsimile:    918-382-1499
wperrine@pmrlaw.net
rmadison@pmrlaw.net
*Counsel for Plaintiff, Lacy Leigh Laizure*
**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**