UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LACY LEIGH LAIZURE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 19-CV-388-JED-JFJ ) |
| CSAA INSURANCE EXCHANGE, CSAA FIRE & CASUALTY INSURANCE COMPANY, AUTOMOBILE CLUB OF OKLAHOMA, *doing business as* AAA Oklahoma, | ) ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

This insurance dispute comes before the Court on Plaintiff Lacy Leigh Laizure's motion to remand for lack of subject matter jurisdiction (Doc. 17).

**I.    BACKGROUND**

Ms. Laizure, a citizen of Oklahoma, originally brought this suit in Oklahoma state court. In her petition, she alleges that a July 2018 water-heater leak severely damaged a house she owned in Tulsa County. At the time, she claims, she was an insured of the defendants by way of a homeowners policy issued by CSAA Fire & Casualty Insurance Company (CSAA Fire & Casualty). (Doc. 2-2 at 3). She alleges that, even though the damage was covered under her policy, the defendants failed to fully and timely pay for the repairs. In connection with these allegations, she brings claims for breach of contract and bad faith against CSAA Fire & Casualty, CSAA Insurance Exchange (the Exchange), and Automobile Club of Oklahoma.

Ms. Laizure acknowledges that her policy was, in the strict sense, issued by CSAA Fire & Casualty, but she claims that the defendants are liable to her collectively. In her petition, she alleges that the defendants form part of a single entity, the CSAA Insurance Group. Within the group, the

Exchange operates as the "lead insurer" and parent entity of several wholly owned subsidiaries, including CSAA Fire & Casualty. By agreement, CSAA Fire & Casualty cedes 100 percent of premiums to the Exchange, after which the Exchange retrocedes "a very small percentage to each subsidiary, keeping the majority for itself." (Doc. 2-2 ¶ 10). The Group sells its insurance products through partnerships with AAA auto clubs. Ms. Laizure claims that she acquired the policy in question through the Group's partnership with Automobile Club of Oklahoma, which does business under the trade name AAA Oklahoma. Because the defendants "operate and are part of a reciprocal insurance exchange, wherein they pool and partner their businesses to offer membership discounts and entice members to purchase policies of insurance[,] . . . all of the subsidiaries and affiliated companies can be held collectively liable for breach of contract and bad faith." (Doc. 2-2 ¶ 9).

Of particular importance to the issue of remand are Ms. Laizure's jurisdictional allegations. She claims that the Exchange, "either directly or via its ownership and control of CSAA [Fire & Casualty], has subscribers/members that are citizens of the State of Oklahoma," so "the Exchange is deemed a citizen of the State of Oklahoma." (Doc. 2-2 ¶ 6). She alleges that the Automobile Club of Oklahoma is a "not-for-profit company" "domiciled" in Oklahoma. (Doc. 2-2 ¶ 7).

## II. PROCEDURAL HISTORY

After Ms. Laizure filed her petition in state court, the Automobile Club of Oklahoma moved to dismiss for failure to state a claim. CSAA Fire & Casualty and the Exchange both filed answers denying liability. (*See* Doc. 2-1). Shortly thereafter, CSAA Fire & Casualty removed the action to this Court, alleging federal diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 2). Ms. Laizure then filed the instant Motion to Remand (Doc. 17).

### III. LEGAL STANDARDS

When a plaintiff brings a civil action in state court, but a federal district court has proper jurisdiction to hear it, a defendant may remove the case to federal court. 28 U.S.C. § 1441(a). The relevant jurisdictional grant in this case, 28 U.S.C. § 1332(a), provides that district courts shall have original jurisdiction over civil actions between citizens of different states. Jurisdiction is proper, however, only where there is complete diversity of citizenship; no plaintiff can be a citizen of the same state as any of the defendants. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Additionally, where federal jurisdiction is based in diversity, the so-called forum-defendant rule bars removal when any of the "properly joined" defendants is a citizen of the state where the action was originally brought. 28 U.S.C. § 1441(b)(2).

A defendant may nevertheless remove a case to federal court based on diversity if the plaintiff fraudulently joined the nondiverse defendant in order to defeat federal jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Am. Nat'l Bank & Trust Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412–13 (10th Cir. 1991). To establish fraudulent joinder, "the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)). When a party alleges the second kind of fraudulent joinder, the party must prove the plaintiff "ha[s] no possibility of recovery" against the nondiverse defendant. *Montano v. Allstate Indemnity*, No. 99-2225, 2000 U.S. App. LEXIS 6852, at *12 (10th Cir. Apr. 14, 2000).

> This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced. "A claim which can be dismissed only after an intricate analysis of

>   state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."

*Id.* at *5–6 (internal citation omitted) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–53 (3d Cir. 1992).

If necessary, a district court may go beyond the pleadings to determine whether a party's joinder is fraudulent:

>   In many cases, removability can be determined by the original pleadings and normally the statement of a cause of action against the resident defendant will suffice to prevent removal. But upon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.

*Smoot v. Chicago, R.I. & P. R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967) (internal citations omitted). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988.

### IV. DISCUSSION

CSAA Fire & Casualty alleges both of the fraudulent joinder flavors described above. That is, the company argues (1) that neither the Exchange nor the Automobile Club of Oklahoma are actually citizens of Oklahoma for diversity purposes; and (2) that, even if they were, their citizenship should be disregarded because Ms. Laizure has no viable cause of action against them. In either case, federal diversity jurisdiction is proper, according to CSAA Fire & Casualty.

#### A. CSAA Insurance Exchange

CSAA Insurance Exchange is a reciprocal insurer, also called an "insurance exchange" or "interinsurance exchange." An insurance exchange is "an aggregation of persons, called subscribers, who, through an attorney-in-fact, cooperate to furnish themselves and each other insurance against a designated risk." Steven Plitt et al., *Couch on Insurance* § 39:48 (3d ed.); *see also* Okla. Stat. tit 36 § 2902 (providing Oklahoma's statutory definition); *Lee v. Interinsurance*

4

*Exch.*, 50 Cal. App. 4th 694, 702–06 (1996) (describing the nature and organization of reciprocal insurers established under California law). The prevailing rule considers reciprocals to be unincorporated associations for the purposes of diversity jurisdiction, holding them to share the citizenship of each of their individual subscribers. *See Arbuthnot v. State Auto. Ins. Ass'n*, 264 F.2d 260, 261–62 (10th Cir. 1959); *True v. Robles*, 571 F.3d 412, 422 n.2 (5th Cir. 2009); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

The Exchange does not dispute that it shares the citizenship of its member subscribers, but it nevertheless argues that it is not a citizen of Oklahoma because none of its subscribers are citizens of Oklahoma. In support of this claim, it offers the affidavit of Katherine Evans, associate general counsel for the Exchange. According to Ms. Evans, "CSAA Insurance Exchange does not have subscribers or members that are citizens of the of State of Oklahoma," and individuals "do not become subscribers or members of CSAA Insurance Exchange by virtue of purchasing a policy of homeowners insurance from CSAA Fire & Casualty Insurance Company." (Doc. 2-10 ¶¶ 2, 4).

Ms. Laizure argues that such "self-serving conclusions of law" cannot satisfy CSAA Fire & Casualty's burden for the purposes of establishing complete diversity. (Doc. 17 at 8). A person becomes a member of the Exchange by buying a policy issued by the Exchange. So, in order to state with certainty that none of its subscribers are citizens of Oklahoma, Ms. Evans would have to know the citizenship of all those who hold policies issued by Exchange. Ms. Laizure argues that this would be impossible, as it would require her to know not only the state where each policy holder resides, but also whether they have the requisite subjective intent to remain there.

This Court recently made much the same critique in a case involving the same defendants. *See Sandhar v. CSAA Gen. Ins. Co.*, No. 19-CV-306-JED-FHM, 2020 WL 4334797 (N.D. Okla. July 28, 2020). There, the Court explained why a nearly identical affidavit from Ms. Evans was "thin gruel" for the purposes of establishing the Exchange's citizenship:

> Nowhere in the affidavit does Ms. Evans describe the Exchange's subscribership base or establish any foundation for her assertion that none of the subscribers are citizens of Oklahoma. The fact that the Exchange does not write business in Oklahoma certainly provides *some* support, but it is not dispositive proof. According to the Exchange's 2017 financial statement, which is on file with the California Department of Insurance, the Exchange wrote $3.54 billion in premiums that year, mostly through auto and homeowners policies issued in California. Given the consumer-oriented nature of the policies in question, it is likely that the overwhelming majority of the subscribers are domiciled (and therefore citizens) of California. Nevertheless, it is possible that some of the policy holders merely maintain a residence in California and are actually domiciled in another state, such as Oklahoma. Ruling out this possibility would require the Exchange to ascertain the legal domicile of each of the Exchange's many thousands of subscribers. As nothing in Ms. Evans's statement suggests that the Exchange has undertaken such a massive project, her unadorned claim that the Exchange "does not have subscribers or members that are citizens of the State of Oklahoma" is more conclusory than conclusive.

*Sandhar*, 2020 WL 4334797, at *3 (internal citation omitted). Nevertheless, the Court noted that the plaintiff offered no evidence that any of the Exchange's policy holders were citizens of Oklahoma nor any legal theory supporting the proposition that the Exchange takes on the citizenship of its subsidiaries' customers. Weak as Ms. Evans's affidavit was, it stood unrebutted. "The defendant opposing remand bears a 'heavy burden,'" the Court reasoned, "but that burden is not so heavy as to require a defendant to conclusively disprove mere speculation, especially when doing so would be impracticable." *Id.* at *4. Consequently, the Court held that the Exchange was not a citizen of Oklahoma.

Like the plaintiff in *Sandhar*, Ms. Laizure offers no evidence that the Exchange has any *direct* subscribers domiciled in Oklahoma, but she argues that the Exchange should nevertheless be treated as if it did because of the Exchange's structure. Citing a litany of evidence that CSAA Fire & Casualty is merely an instrumentality of the Exchange, she argues that the Exchange must be considered "the true insurer." (*See* Doc. 26 at 4). And if the Exchange is the true insurer, she contends, CSAA Fire & Casualty's policyholders in Oklahoma must be considered the Exchange's policyholders. And since the Exchange's policy holders are the subscribers whose citizenship

6

establishes the citizenship of the Exchange, the Exchange must be considered to be a citizen of Oklahoma.

This argument is unpersuasive. For one, it rests on a chain of logic that is, to put it mildly, attenuated. More importantly, Ms. Laizure offers no legal authority to support it. That the Exchange acted like her insurer or used CSAA Fire & Casualty as an alter ego may provide grounds for the Exchange's liability, but it is unclear why it would operate to transform the customers of CSAA Fire & Casualty into subscribers of the Exchange. Because Ms. Evans's affidavit stands unrebutted, and Ms. Laizure presents no legal support for her theory that the Exchange takes on the citizenship of its subsidiaries' customers, the Court cannot help but reach the same conclusion in this case as it did in *Sandhar*—the Exchange is not a citizen of Oklahoma for the purposes of diversity. Since the Exchange is a diverse defendant, the Court need not reach the question of whether Ms. Laizure's claims against it are viable.

This outcome, it must be said, is at odds with a similar case decided in the Western District of Oklahoma. *See McDonald v. CSAA Ins. Exch.*, No. CIV-16-336-R, 2017 WL 887108 (W.D. Okla. Mar. 6, 2017). There, as here, CSAA defendants argued that the Exchange was not a citizen of Oklahoma because it did not issue policies in the state and therefore did not have subscribers who were Oklahoma citizens. The court was not convinced. Much as this Court did in *Sandhar*, the court reasoned that "[t]he fact that a policy may be written in California does not foreclose that one or more subscribers is a citizen of Oklahoma for purpose of diversity jurisdiction." *Id.* at *2. Unlike this Court, however, the court in *McDonald* held that, because CSAA had not ruled out the possibility that one of its subscribers was a citizen of Oklahoma, it had failed in its burden to establish complete diversity. *Id.* at *2–3.

7

Nevertheless, the Court declines to follow *McDonald*. Although the court held that the CSAA defendants had not carried their burden, the court did not discuss the evidence it considered in reaching this conclusion. Because determining a party's citizenship is necessarily a fact-specific exercise, this limits *McDonald*'s precedential value. Given the record in this case, the Court is satisfied that CSAA Fire & Casualty has met its burden to show that the Exchange is not a citizen of Oklahoma.

### B. Automobile Club of Oklahoma

CSAA Fire & Casualty argues that Automobile Club of Oklahoma is not a citizen of Oklahoma for diversity purposes. More precisely, the company argues that Automobile Club of Oklahoma's citizenship is immaterial because the Club no longer exists as a distinct legal entity. In support of this assertion, CSAA Fire & Casualty submits the affidavit of Jared Peterson, regional president of AAA Club Alliance Inc. According to Mr. Peterson, AAA Club Alliance acquired Automobile Club of Oklahoma in a merger, effective October 31, 2016. (Doc. 2-11 ¶ 2). AAA Club Alliance is a Delaware corporation with its principal place of business in Delaware, (Doc. 2-11 ¶ 3), which would make the Alliance a citizen of Delaware for diversity purposes, *see* 28 U.S.C. § 1332(c)(1).

Ms. Laizure does not dispute the proposition that, when two corporations merge, it is the surviving entity's citizenship that controls.[1] Instead, she calls into question whether Automobile Club of Oklahoma has actually been merged into AAA Club Alliance Inc. In support of this attack, she offers Automobile Club of Oklahoma's "entity summary" as shown on the Oklahoma Secretary of State's website, which lists the entity as a "Domestic Not For Profit Corporation,"

---

1. Authority on this question is sparse, but "[t]he cases seem to be in agreement that the citizenship of the surviving entity is controlling; the citizenship of the predecessor company becomes irrelevant." Arthur R. Miller, *Federal Practice and Procedure* ("Wright & Miller") § 3623 (3d ed., April 2020 update).

rather than a foreign, for-profit corporation. (Doc. 17 at 9–10, citing Doc. 17-3 at 3). Additionally, she notes that AAA Club Alliance did not object or argue insufficient service of process even though she served the allegedly nonexistent Automobile Club of Oklahoma at its listed address in Tulsa. Finally, Ms. Laizure submits a pleading that AAA Club Alliance filed in a recent case. There, AAA Club Alliance admitted in its answer to being an Oklahoma citizen. (Doc. 17 at 10, citing Docs. 17-5, 17-6). Ms. Laizure argues that, given this evidence, Mr. Peterson's testimony is insufficient to show that the merger actually happened. She overstates her case.

The evidence supposedly undermining the merger's existence is gossamer thin. The entity summary cited by Ms. Laizure shows that the Automobile Club of Oklahoma has been merged into a new entity. (Doc. 17-3 at 3). Consequently, this evidence supports, rather than undermines, the proposition that the Automobile Club of Oklahoma no longer exists. As for AAA Club Alliance's acceptance of service, this has no evidentiary value. The fact that the corporation accepted service on behalf of a subsumed merger partner does not mean that service was proper, and it certainly is not evidence that the merger never happened. Finally, that AAA Club Alliance decided not to dispute the issue of its citizenship in another case is irrelevant. CSAA Fire & Casualty disputes it here and has supported its position by submitting the testimony of a witness with personal knowledge of the merger. Given the record, this was enough to satisfy CSAA Fire & Casualty's burden.

In sum, the Court finds that Automobile Club of Oklahoma was merged into AAA Club Alliance Inc. prior to Ms. Laizure's filing of this lawsuit. As a result, AAA Club Alliance's citizenship controls for the purposes of § 1332's diversity requirement. Because AAA Club Alliance is a citizen of Delaware, while Ms. Laizure is a citizen of Oklahoma, the requisite diversity is satisfied. As was the case for the Exchange, the Court's finding of diversity obviates

any need to address the viability of Ms. Laizure's claims against Automobile Club of Oklahoma or its successor in interest, AAA Club Alliance.

## V.  CONCLUSION

For the reasons explained above, the Court finds that neither Automobile Club of Oklahoma nor CSAA Insurance Exchange share Plaintiff's Oklahoma citizenship. Consequently, complete diversity exists and federal subject matter jurisdiction is proper under 28 U.S.C. § 1332. Plaintiff's Motion to Remand (Doc. 17) is therefore **denied.**

SO ORDERED this 19th day of October, 2020.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT